IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LTRAC LLC D/B/A PROSPECTNOW, | Case No. 1:23-cv-00336-AKB |
| Plaintiff/Counterdefendant, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| STEVEN WAYNE, | |
| Defendant/Counterclaimant. | |
| STEVEN WAYNE, | |
| Third-Party Plaintiff, | |
| v. | |
| BUILDOUT, INC., | |
| Third-Party Defendant. | |

Pending before the Court are three motions: Defendant/Counterclaimant Steve Wayne's (Wayne) Motion for Partial Summary Judgment (Dkt. 44); Plaintiff/Counterdefendant LTRAC, LLC (LTRAC) and Third-Party Defendant Buildout, Inc.'s (Buildout) Cross-Motion for Partial Summary Judgment (Dkt. 45); and LTRAC and Buildout's Motion to Defer Summary Judgment under Rule 56(d) of Federal Rules of Civil Procedure (Dkt. 46).

Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, the Court concludes that the Employment Agreement is fully integrated, barring

**MEMORANDUM DECISION AND ORDER - 1**

consideration of extrinsic evidence to interpret it; any bonus is a wage under the Idaho Wage Claim Act (IWCA), Idaho Code §§ 45-601 - 621; and LTRAC has not asserted a viable claim for breach of fiduciary duty. Further, the Court concludes that genuine issues of material fact preclude summary judgment for either party regarding whether LTRAC owes severance pay and whether Wayne breached the covenant of good faith and fair dealing.

## BACKGROUND

Buildout "is a web platform designed to assist commercial real estate brokers in highly competitive markets" by providing them with various services and management tools. (Dkt. 20 at ¶ 11). Buildout is the sole owner of LTRAC, which Buildout acquired in December 2021, under a Membership Interest Purchase Agreement (MIPA). (Dkt. 39-1 at ¶ 3; Dkt. 44-3 at ¶ 2). Wayne was one of LTRAC's founders and an owner of LTRAC at the time of its sale to Buildout. (Dkt. 45-1 at ¶¶ 1, 3).

After the sale, LTRAC employed Wayne under an Employment Agreement as an employee and LTRAC's President. (Dkt. 20-1 at ¶ 2). John McKernan, Buildout's Vice President and Secretary, executed the Agreement on LTRAC's behalf. (*Id.* at p. 13). As an LTRAC employee, Wayne had management discretion over LTRAC's operations, including over its sales, its invoicing and the "format or substance of [its] contracts." (Dkt. 45-1 at ¶¶ 32-33). Meanwhile, Buildout retained high-level supervisory authority over Wayne's work. (*Id.* at ¶ 32; Dkt 39-3 at ¶ 7, Ex. 4).

At issue in this case is whether Wayne is entitled to compensation under two separate provisions of the Employment Agreement, including those governing his right to receive six months of severance pay (Severance) and a bonus (Bonus). (Dkt. 20-1 at ¶¶ 3(b), 5(a)). The Agreement provides Wayne is entitled to the Bonus if he remains employed through December 31,

2022, and if LTRAC receives an identified minimum amount of revenue in 2022 (2022 Revenue).

(*Id.* at ¶ 3(b)). The Agreement defines 2022 Revenue as:

> [T]he aggregate amount of actual revenue and committed revenue (i.e., bookings, whether or not collected in 2022) . . . actually generated or booked by LTRAC, LLC or its affiliates and properly invoiced in 2022 from the sale of any product or service offered by the company prior to December 31, 2022 . . . .

(*Id.*). The Agreement, however, does not define "properly invoiced."

The Employment Agreement also provides Wayne is entitled to Severance if certain conditions are met. (*Id.* at ¶ 5(a)). One of those conditions is that Wayne sign a release waiving "all current or future claims" against LTRAC within twenty-one days of his termination. (*Id.* at ¶ 5(c)). Attached to the Agreement as Exhibit A is a "Form of Release" (Exhibit A Release). (*Id.* at Ex. A). The Agreement requires Wayne to execute a release "in substantially the form attached hereto as Exhibit A" in consideration for Severance; otherwise LTRAC is not obligated to pay Severance. (*Id.* at ¶¶ 5(b), (c)).

LTRAC contends that "as of June 2022, it was obvious [it] was not on track to meet the 2022 Revenue threshold required for Wayne to earn the Bonus." (Dkt. 44-2 at ¶ 9). Further, it asserts that around June 2022, "Wayne unilaterally began modifying the format" of customers' "Annual Term Monthly Payment Contracts," which provide that a customer is "obligated only to pay a monthly amount for each month the contract was in force." (*Id.* at ¶ 10). Specifically, Wayne began "including a legend [or stamp] on top of the contract that included the word 'invoice'" and listed the total amount that either reflected the full contractual amount or the amount "Wayne could claim towards" the Bonus. (*Id.*).

LTRAC was aware of Wayne's invoicing practices and does not claim the contracts themselves were improper. (Dkt. 45-1 at ¶ 16) ("LTRAC and Buildout have never disputed that the Annual Term Monthly Payment Contracts are proper contracts or that the portion of revenue

from such contracts . . . should count towards 2022 Revenue"). LTRAC, however, informed Wayne in October 2022 that it disputed his invoicing practices complied with the Employment Agreement, and it alleges Wayne's invoicing practices constitute improper invoicing. Further, around this same time, LTRAC demanded Wayne fully integrate LTRAC's sales team with Buildout's, but Wayne delayed doing so. (Dkt. 44-2 at ¶¶ 18-19; Dkt. 45 at p. 22).

LTRAC terminated Wayne effective December 31, 2022, and the parties disputed whether Wayne was entitled to the Bonus. (Dkt. 49-2 at pp. 1-9). After Wayne notified McKernan that he could not "sign any release" unless it "carved out [the parties'] bonus dispute" (Dkt. 39-3 at p. 19), McKernan proposed a release, to which the parties refer as the January 2023 Release. (*Id.* at pp. 5-11). This revised January 2023 Release added the language that Wayne "forfeited" the Bonus:

> [Wayne] acknowledges and agrees that [LTRAC] did not achieve the specified 2022 Revenue (as defined in the Employment Agreement) threshold, and that in accordance with the terms of the Employment Agreement, the Bonus (as defined in the Employment Agreement) was therefore not earned and is forfeited.

(*Id.* at Ex. 1, ¶ 2(b)).

In response to the proposed January 2023 Release, Wayne affirmed that he was willing "to sign a release substantially in the same format" as the Exhibit A Release; however, he declined to release his claim to the Bonus, stating that he would "carve out an exception" for the Bonus. (*Id.* at Ex. 2). McKernan, however, stated LTRAC would not pay Severance unless Wayne waived all his claims "without any carve outs." (*Id.*). Ultimately, Wayne did not execute any release, and LTRAC did not pay Wayne either the Bonus or Severance. (Dkt. 49-2 at ¶ 17).

In July 2023, LTRAC filed this action seeking declaratory relief that Wayne is not entitled to the Bonus under the Employment Agreement. (Dkt. 1). In response, Wayne asserted counterclaims against LTRAC and a third-party complaint against Buildout alleging violations of the IWCA for failure to pay the Bonus and Severance, breach of contract, breach of the implied

covenant of good faith and fair dealing, fraudulent inducement, and unjust enrichment. (Dkt. 12). Thereafter, LTRAC filed an amended complaint asserting claims for breach of the fiduciary duties of good faith, of fair dealing, and of loyalty and for breach of the implied covenant of good faith and fair dealing. (Dkt. 20).

Wayne moves for partial summary judgment. (Dkt. 39). He seeks a ruling that the Employment Agreement is "fully integrated"; the Bonus and Severance are wages within the meaning of the IWCA; and Severance is due and owing. He also seeks summary judgment on LTRAC's claims of breach of fiduciary duty and of the implied covenant of good faith and fair dealing. (Dkt. 39-1 at p. 2). LTRAC opposes Wayne's summary judgment motion and cross moves for summary judgment that Wayne is not entitled to Severance because he failed to execute a release waiving his claims against LTRAC. (Dkt. 44). As an alternative to summary judgment, LTRAC requests the Court defer considering the summary judgment motions to allow LTRAC to seek discovery on "Wayne's improper invoice practices, [his] true motivations for adopting a new 'invoicing' method, and [his] resistance to delaying integration of the LTRAC and Buildout salesforce." (Dkt. 46-1).

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). The trial court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment,

the court must "view[ ] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *Id.* (citation omitted).

Where parties file cross-motions for summary judgment on the same issue, the court must consider both motions and all evidence submitted by both parties. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Each motion must be considered on its own merits. *Id.* Even if both parties assert no genuine disputes of material fact exist, the court must still review the record and determine if disputes of material fact exist. *Id.*

## ANALYSIS

### A.    The Employment Agreement is Integrated

Wayne seeks a ruling that the Employment Agreement is integrated thereby precluding the Court's consideration of extrinsic evidence to interpret it. This request relates to the parties' dispute about whether they intended the Bonus as compensation for Wayne's services as an employee under the Agreement or as an "earnout" under the MIPA. Key to resolving this dispute is whether the Court may consider extrinsic evidence regarding the parties' intentions related to the Bonus.

Wayne asserts the Court cannot consider extrinsic evidence because the Agreement is "fully integrated" and a "final statement of the parties' agreement." (Dkt. 39-1 at pp. 7-8). In response, LTRAC argues that the Agreement's "integration clause . . . expressly references and incorporates other types of agreements" including the MIPA. Based on this characterization of the clause, LTRAC argues that the Agreement "exempts [those agreements] from the scope of integration" so the Court may "consider extrinsic evidence establishing that the Agreement's Bonus provision was an earnout to the MIPA." (Dkt. 45 at pp. 10-11).

Idaho law provides that unless a party alleges fraud or mistake, "extrinsic evidence of prior or contemporaneous negotiations or conversations is not admissible to contradict, vary, add to, or detract from the terms of the [written] contract" if the contract is unambiguous and "complete" on its face. *Howard v. Perry*, 106 P.3d 465, 467 (Idaho 2005). If a written contract contains a merger clause,[1] then it is complete on its face. *Id.* at 468. "The merger clause is not merely a factor to consider in deciding whether the agreement is integrated; [rather] it proves the agreement is integrated." *Id.*

A merger clause's purpose "is to establish that the parties have agreed that the contract contains [their] entire agreement." *Id.* "Where a written agreement is integrated, questions of the parties' intent regarding the subject matter of the agreement may only be resolved by reference to the agreement's language." *Steel Farms, Inc. v. Croft & Reed, Inc.*, 297 P.3d 222, 230 (Idaho 2012). An agreement, however, may incorporate by reference another agreement "if the terms to be incorporated are adequately identified and readily available for inspection by the parties." *City of Meridian v. Petra Inc.*, 299 P.3d 232, 242 (Idaho 2013).

In this case, the Employment Agreement's merger clause provides:

Complete Agreement. This Agreement embodies the complete agreement and understanding between the parties with respect to the subject matter hereof and effective as of its date supersedes and preempts any prior understandings, agreements or representations by or between the parties, written or oral, which may have related to the subject matter hereof in any way. *Notwithstanding the foregoing, this Agreement does not supersede or in any way limit or otherwise affect restrictive covenants in any other types of agreements between the Company and Executive to which Executive may be bound, such as shareholder agreements, sale of interest agreements, or option agreements.*

---

[1]     Although the parties refer to the provision at issue as an "integration clause," that term is synonymous with a "merger clause." *See, e.g.*, *In re Resler*, 551 B.R. 835, 843 (D. Idaho 2016) (referring to integration and merger clauses synonymously); *Posey v. Ford Motor Credit Co.*, 111 P.3d 162, 166 (Idaho Ct. App. 2005) (same).

MEMORANDUM DECISION AND ORDER - 7

(Dkt 20-1 at pp. 11-12) (emphasis added).

LTRAC relies on the italicized language to assert the Employment Agreement "expressly references and incorporates other types of agreements" including the MIPA. (Dkt. 45 at p. 10). Based on this characterization of the merger clause, LTRAC argues extrinsic evidence may be considered to determine the Bonus was "an earnout to the MIPA." (*Id.* at p. 11). The Court disagrees. Contrary to LTRAC's argument, the merger clause does not incorporate any other agreements or "exempt" the MIPA "from the scope of integration." (*See id.* at p. 10).

Rather, the language on which LTRAC relies unambiguously states the Employment Agreement "does not *supersede*" or in "any way *limit*" other agreements. (Dkt. 20-1 at pp. 2, 12) (emphasis added). That the Agreement does not supersede or limit other agreements does not thereby incorporate those agreements by reference into the Agreement or otherwise exempt them from the merger clause's scope. Furthermore, the merger clause's reference to "other agreements" is limited to those agreements "between the Company and the Executive," or in other words, agreements between LTRAC and Wayne. Although the parties did not include the MIPA in the record, that agreement is apparently not between LTRAC and Wayne but rather "between Buildout and LTRAC." (Dkt. 44-2 at ¶ 5). For these reasons, the Agreement does not incorporate the MIPA by reference. Accordingly, the Court concludes the Agreement is complete, and the merger clause bars consideration of extrinsic evidence.

## B.    The Bonus and Severance Are Wages

Wayne also seeks a ruling that the Employment Agreement unambiguously provides the Bonus and Severance are wages under the IWCA. In response, LTRAC concedes Severance is compensation under the Agreement but argues the Agreement's "plain language does not answer the question of whether the Bonus was compensation for Wayne's services as an employee."

(Dkt. 45 at p. 11; *id* at n.2, n.5). Specifically, LTRAC argues the Agreement is ambiguous because it is "subject to conflicting interpretations . . . whether the Bonus was compensation for Wayne's services as an employee or something else entirely." (*Id.* at p. 12). Based on this argument, LTRAC asserts extrinsic evidence must be considered to resolve the ambiguity of whether the Bonus is a wage subject to the IWCA, notwithstanding that the Agreement is completely and fully integrated.

The IWCA "governs an employee's claim to wages against a former employer." *Smith v. Kount, Inc.*, 497 P.3d 534, 537 (Idaho 2021). It broadly defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece[,] or commission basis." I.C. § 45-601(7) (emphasis added). Idaho law provides that "bonuses fall under the definition of wages and are subject to the mandatory trebling statute if they are not paid when they are due." *Savage v. Scandit, Inc.*, 417 P.3d 234, 239 (Idaho 2018); *see also Manning v. Micron Technology, Inc.*, 506 P.3d 244, 248 (Idaho 2022) (noting annual bonus based on net profits may constitute wages under IWCA); *Paolini v. Albertson's, Inc.*, 149 P.3d 822, 824 (Idaho 2006) (same).

When interpreting a contract, a court begins with the document's language. *Potlatch Educ. Ass'n v. Potlatch School Dist. No. 285*, 226 P.3d 1277, 1280 (Idaho 2010). Absent an ambiguity, the contract "must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *Id.* "A court must look to the contract as a whole and give effect to every part thereof." *Steel Farms*, 297 P.3d at 229. "A contract is ambiguous when there are two different reasonable interpretations or the language is nonsensical." *Potlatch Educ.*, 226 P.3d at 1280. Whether a contract is ambiguous is a question of law. *Id.*

Here, the Employment Agreement provides that LTRAC "shall employ" Wayne, who "shall serve as the President" of LTRAC and "devote [his] best efforts and [his] full business time

and attention" to LTRAC's business. (Dkt. 3-1 at ¶ 2). Paragraph 3 of the Agreement is entitled "Compensation and Benefits" and includes subparagraphs for "Salary," "Bonus," "Standard Benefits Package," and "Business Expenses." The Bonus paragraph provides that Wayne "shall have the opportunity to *earn* a one-time bonus . . . provided, however, that [Wayne] shall be not eligible for the Bonus unless [he] remains in the *continuous employ* of [LTRAC] through December 31, 2022," or is terminated without cause or for good reason before then. (*Id.* at ¶ 3(b)) (emphasis added; underlining omitted).

Based on the Agreement's plain language, the Court concludes the Bonus is compensation for Wayne's employment services. The provision governing the Bonus expressly refers both to Wayne earning the Bonus and to the requirement that he remain continuously employed to be eligible for the Bonus. These references in conjunction with the fact that the Bonus provision appears under the heading "Compensation and Benefits" unambiguously establish that Wayne is earning the Bonus as compensation for his employment services. Further, by tying the Bonus to LTRAC's earned revenue, the Agreement clearly indicates the Bonus is for Wayne's employment services in making LTRAC profitable. Because the Bonus is compensation for Wayne's employment services, it is a "wage" under the IWCA.

LTRAC's arguments to the contrary are unpersuasive. The language that the parties entered into the Agreement "[i]n consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged" does not create any ambiguity. (*Id.* at p. 2; Dkt. 45 at p. 11). This language is a commonplace contract recital indicating consideration supports the Agreement. The recital does not characterize the monetary consideration, such as the Bonus, in any particular manner or for any particular purpose.

Further, the Employment Agreement is not ambiguous about whether the Bonus is intended to compensate Wayne for his services, his noncompete, his nondisclosure, or the assignment of his discoveries and inventions, as LTRAC argues. (Dkt. 45 at p. 12). Wayne's noncompete, nondisclosure, and assignment obligations appear under an entirely *different* section of the Agreement than the Bonus provision. (Dkt. 3-1 at ¶¶ 3, 6). Further, the noncompete and the nondisclosure obligations survive the termination of Wayne's employment. Meanwhile, the Agreement provides the Bonus "will be paid in the 2023 calendar year." (*Id.* at ¶ 3(b)). This timing makes nonsensical any argument that the Bonus is compensation for Wayne's noncompete or nondisclosure obligations.

LTRAC's reliance on *Steel Farms* is also misplaced. In that case, the Idaho Supreme Court considered whether a lease unambiguously identified irrigation equipment as a fixture on a property. *Steel Farms*, 297 P.3d at 230. The Court held that, while the lease generally referred to fixtures, it did not address the nature or character of the irrigation equipment. *Id.* Accordingly, the Court ruled that the trial court must consider parol evidence on remand to determine whether the parties intended the irrigation equipment to be a fixture. *Id.* at 230-31.

Relying on *Steel Farms*, LTRAC argues the Employment Agreement "does not 'expressly describe' whether the parties intended the Bonus to be compensation for Wayne's services, leaving the 'character' and 'nature' of the Bonus an open question" to be resolved by parol evidence. (Dkt. 45 at p. 14). The Court disagrees. Contrary to *Steel Farms*, the Employment Agreement does expressly address the nature of the Bonus as compensation, namely, the language providing for the Bonus appears under the heading "Compensation"; it must be "earn[ed]"; and it is available only if Wayne "remain[ed] in continuous employ." Based on the Agreement's plain, unambiguous

language, the Bonus is compensation for Wayne's employment services and, thus, a wage under the IWCA.

## C.     Whether Severance is Due is a Disputed Factual Question

The parties both move for summary judgment on the issue of whether Wayne is entitled to Severance. (Dkt. 39-1 at p. 2; Dkt. 44). The Employment Agreement provides for Severance if Wayne's employment ended (without cause or for good cause) earlier than the Agreement's three-year employment period. (Dkt. 3-1, ¶  5(b)). The Agreement further provides, however, that LTRAC is not required to pay Severance unless, within twenty-one days of Wayne's termination, Wayne "executes a release of all current or future claims, known or unknown, arising on or before the date of the release . . . in substantially the form" of the Exhibit A Release attached to the Agreement. (*Id.* at ¶ 5(c)). As previously noted, LTRAC presented Wayne with the January 2023 Release, which was different from the Exhibit A Release, because the January 2023 Release expressly required Wayne to release his claim to the Bonus; Wayne never signed any release; and LTRAC never paid Severance.

LTRAC argues that Wayne's failure to execute any release is fatal to his demand for Severance. (Dkt. 45 at p. 16). Meanwhile, Wayne asserts numerous arguments that he is entitled to Severance including that: (1) under the terms of the Employment Agreement, he earned Severance (Dkt. 39-1 at p. 13); (2) he was not required to sign the January 2023 Release because it was not "in substantially the form" of the Exhibit A Release (*id.* at p. 14); and the doctrines of "anticipatory breach," "tender," "futility," and "bad faith" excused him from signing a release. (Dkt. 49 at ap. 11-14). Central to the parties' dispute about Severance is whether Wayne was required to sign a release as a condition precedent to LTRAC's obligation to pay Severance and

whether LTRAC anticipatorily repudiated its Severance obligation by requiring Wayne to sign the January 2023 Release rather than the Exhibit A Release.

### 1. Condition Precedent

A condition precedent may be expressed in the parties' agreement. *Weisel v. Beaver Springs Owners Ass'n*, 272 P.3d 491, 500 (2012). Whether a contractual provision is a condition precedent generally depends on what the parties intended, which in turn is "adduced from the contract itself." *Id.* If the particular provision is plain and unambiguous, a court may determine that a condition precedent exists as a matter of law. *Id.*; *see also Allen v. Campbell*, 706 F. Supp. 3d 1047, 1054 (D. Idaho 2020). Meanwhile, if the parties' intent cannot be determined from a contract's plain language, then the contract's interpretation is a factual question. *Weisel*, 272 P.3d at 500.

"A condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due." *Dengler v. Hazel Blessinger Family Trust*, 106 P.3d 449, 454 (Idaho 2005). "A condition precedent is distinguishable from a promise or covenant in that a condition creates no right or duty of performance in itself and its non-occurrence does not constitute a breach of the contract." *World Wide Lease, Inc. v. Woodworth*, 728 P.2d 769, 776 (Idaho Ct. App. 1986).

When there is a failure of a condition precedent through no fault of the parties, no liability or duty to perform arises under the contract. *Dengler*, 106 P.3d at 454. Where a party is the cause of the failure of a condition precedent, however, he cannot take advantage of the failure. *Id.* Rather, a party who controls whether the condition precedent happens must make a reasonable effort to cause the condition to happen. *Id.*

Here, the record shows that Wayne was terminated before his employment period expired and that the Employment Agreement provides LTRAC will pay Severance to Wayne, if his

employment is terminated before that period. (Dkt. 39-3 at ¶ 2; Dkt. 3-1 at ¶ 5(b)). Further, however, the Employment Agreement provides, "[n]otwithstanding anything herein to the contrary, [LTRAC] *shall not be obligated* to make any [Severance] payment . . . *unless* . . . [Wayne] executes *a release of all current or future claims*, known or unknown, arising on or before the date of the release against [LTRAC] *in substantially the form* attached hereto as Exhibit A." (Dkt. 3-1 at ¶ 5(c)) (emphasis added).

Based on the Employment Agreement's plain language, the Court concludes the Agreement's requirement that Wayne sign a release is a condition precedent to LTRAC's obligation to pay Severance. Specifically, the Agreement provides LTRAC "*shall not be obligated* to make any [Severance] payment . . . *unless* . . . [Wayne] executes *a release*. . . ." (Dkt. 20-1 at ¶ 5(c)). This language clearly requires an executed release before LTRAC's contractual obligation to pay Severance arises. Moreover, the parties do not dispute the requirement of an executed release is a condition precedent to the payment of Severance, and courts have frequently held that an executed release requirement is a condition precedent to an obligation to pay severance. (*See* Dkt. 49 at pp. 5-6 (acknowledging execution of release is condition precedent to severance); Dkt. 54 at pp. 4-5 (citing persuasive case law that release's execution is condition precedent to severance)).

## 2. Anticipatory Repudiation

"Idaho law defines anticipatory breach of contract as 'a repudiation by the promisor of his contractual duty before the time fixed in the contract for his performance has arrived.'" *Davis v. Blast Properties, Inc.*, No. 1:21-cv-218-BLW, 2022 WL 43877, at *11 (D. Idaho Jan. 4, 2022) (quoting *Trumble v. Farm Bureau Mut. Ins. Co.*, 456 P.3d 201, 215 (Idaho 2019)). "[N]ot all statements of repudiation are actionable," however. *Id.* at *12 (citing *Trumble*, 456 P.3d at 216-

17). "To repudiate, a party must make a 'positive, unconditional, and unequivocal declaration of fixed purpose not to perform the contract in any event or at any time.'" *Id.* (quoting *Tricore Invs. LLC v. Estate of Warren*, 485 P.3d 92, 112 (Idaho 2021). The party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not and cannot perform. *Id.*

Regarding the sufficient definiteness of a party's repudiation, the Idaho Supreme Court in *Tricore*, 485 P.3d at 113, held that a party's attempts to renegotiate the original contract may not be sufficiently positive to be reasonably interpreted as a repudiation. Rather, the Court explained that "offering a counterproposal after an agreement has been reached does not amount to a repudiation" and that "such ongoing discussions are simply that—discussions—which, without more, do not come close to a positive, unconditional, and unequivocal declaration." *Id.* "Under Idaho law, discussions, and even offers to modify the underlying contract, do not amount to repudiation." *Davis*, 2022 WL 43877, at *13.

Here, Wayne had twenty-one days after his termination to fulfill the condition precedent to Severance by signing a release. (Dkt. 3-1 at ¶ 5(c)). The record contains the parties' communications during this timeframe about the release and the parties' ongoing dispute at that time about whether LTRAC had reached the 2022 Revenue goal necessary for Wayne to receive the Bonus. On January 17, 2023, Wayne wrote McKernan that "I can't sign any release unless we carve out the bonus dispute in that document or include a resolution to the bonus dispute." (Dkt. 39-3 at p. 19). Sometime thereafter, McKernan sent Wayne the January 2023 Release. As noted above, the January 2023 Release specifically provides Wayne "forfeit[s]" the Bonus in contrast to the Exhibit A Release, which more generally provides Wayne releases "any and all claims" against LTRAC. (*Compare* Dkt. 20-1 at Exhibit A *with* Dkt. 39-3 at p. 7, ¶ 2(b)).

In response to receiving the January 2023 Release, Wayne wrote to McKernan on January 23:

> I am prepared to sign a release agreement today before 5:00 E.T. . . . but in reviewing the one you sent, language was added to the original version from my employment agreement that would forfeit my rights to the bonus. To be clear, I will sign a release substantially in the same format, releasing any and all claims that I might have, except I would carve out an exception for the bonus. I believe I have earned and am entitled to the severance, but given the dispute over the bonus, it seems fair we should separate the severance and the bonus.

(Dkt. 39-3 at p. 16). In reply, McKernan wrote that LTRAC "will not be paying severance unless we receive a release of all claims without any carve outs." (*Id.*).

Based on this record, the Court concludes that genuine material factual issues preclude summary judgment for either party on whether Severance is currently due. These facts include, for example, whether Wayne's statement that he was prepared to sign a release agreement "in substantially the same format" was adequate to show he was ready, willing, and able to perform the condition precedent of signing the Exhibit A Release. *See Hinkle v. Winey*, 895 P.2d 594, 598-99 (Idaho Ct. App. 1995). ("Even where [a party] has repudiated the contract . . . the [other] party seeking performance must show it is ready, willing and able to perform its obligations under the contract. . . .). Further, a factual question exists whether LTRAC's proposal of the January 2023 Release constitutes a positive, unconditional, and unequivocal declaration that it would not accept the Exhibit A Release even if Wayne signed it, or alternatively, merely an attempt to renegotiate the release language.

In reaching this conclusion, the Court rejects LTRAC's characterization of *Trumble* as concluding a party can never repudiate a contractual obligation which is subject to a condition precedent. Although portions of the *Trumble* decision conceivably support that proposition, the decision taken in context stands for the proposition that a repudiation must be clear and

unequivocal, as the Court in *Davis* concluded. *See Davis*, 2022 WL 43877, at *13 ("Under Idaho law, discussions, and even offers to modify the underlying contract, do not amount to repudiation."). The parties' remaining arguments do not change the Court's conclusion that genuine issues of material fact preclude summary judgment for either party on whether Severance is due and owing.[2]

## D.    Wayne's Duty of Loyalty

LTRAC alleges that Wayne owed it "the fiduciary duties of good faith, fair dealing, and loyalty" and that he breached these duties by "repeatedly placing his own personal interests before [LTRAC's] with respect to [its] sales and invoicing practices" and by refusing "to integrate LTRAC's sales, marketing, and product development organizations with Buildout's." (Dkt. 20 at ¶¶ 54-57). Wayne moves for summary judgment on this claim.[3] In support, he argues he only owed a duty of loyalty; that duty is limited to not "acting outside the scope of [his] agreed-upon activities," not competing against LTRAC, and not soliciting its clients; and no evidence shows he

---

[2]    Wayne argues LTRAC cannot rely on his failure to fulfill the condition precedent of signing a release because LTRAC did not allege an affirmative defense on this basis. (Dkt. 49 at pp. 5-6). Assuming LTRAC were required to allege the condition precedent's failure as an affirmative defense, the Court concludes LTRAC has met both the good cause standard for amending the scheduling order to allow the amendment under Rule 16(b) of the Federal Rules of Civil Procedure and the standard for amending pleadings under Rule 15. *See SFR Invs. Pool 1, LLC v. Fed. Home Loan Mortg. Corp.*, No. 2:15-cv-806-APG-NJK, 2020 WL 4059696, at *3 (D. Nev. July 20, 2020) (applying both standards to determine whether party may raise affirmative defense for first time on summary judgment). That Wayne never signed a release is undisputed. Further, contrary to Wayne's concern about discovery, the Court has granted the parties' motion to extend the discovery deadline until June 27, 2025. (Dkt. 63). Accordingly, LTRAC's assertion of the condition precedent has not and does not prejudice Wayne.

[3]    In his reply, Wayne challenges LTRAC's purported summary judgment motion on its claim for breach of a fiduciary duty. (Dkt. 49 at p. 14). LTRAC, however, clarifies it is not seeking summary judgment on the claim but rather asserts genuine material factual issues preclude summary judgment for Wayne on the claim. (Dkt. 54 at p. 18).

engaged in these prohibited activities. (Dkt. 39-1 at p. 17). LTRAC responds that Wayne's duty of loyalty[4] more broadly precluded him from "plac[ing] his own interests before [LTRAC's] and that sufficient evidence supports he violated this duty by adopting misleading invoicing practices" and by "not integrat[ing] his LTRAC sales team with Buildout's." (Dkt. 45 at pp. 18-20).

While the parties dispute the scope of Wayne's fiduciary duty of loyalty, they rely on the same Idaho case law in support of their opposing positions. Wayne argues that under Idaho law, an employee's duty of loyalty is limited to not competing with the employer, not soliciting the employer's customers and employees, and not "acting outside the scope of [his] agreed-upon activities." (Dkt. 39-1 at pp. 16-17). In support, Wayne cites *Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069 (Idaho 2010), *R Homes Corp. v. Herr*, 123 P.3d 720 (Idaho 2005), and *Jensen v. Sidney Stevens Implement Co.*, 210 P. 1003 (Idaho 1922).

In *Jensen*, an employee brought an action to recover wages against his employer. 210 P. at 1003. In response, the employer asserted that the employee had a duty to keep the employer "fully informed" regarding all matters affecting the employer's purchase of a property; the employee failed to disclose the property's "true conditions"; after the employer purchased the property, the employee induced the employer to sell the property to the employee "for a much less sum" than a prospective purchaser had offered the employee for the property; and then the employee resold the

---

[4]    LTRAC does not directly dispute Wayne's assertion that the *only* fiduciary duty he owed LTRAC was a duty of loyalty as an employee. Instead, LTRAC simply states in a footnote that "it is worth noting that Wayne, as an agent and officer (the President) of LTRAC, also owed other fiduciary duties to the Company, including the fiduciary duties of good faith and fair dealing." (Dkt. 45 at p. 19 n.9). LTRAC, however, fails to support this assertion with any argument. If LTRAC intended to avoid summary judgment on its fiduciary duty claim by relying on other purported duties, it was required to support that argument. Accordingly, it has waived any argument that Wayne had such a duty. *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989) (arguments not "raised sufficiently for the trial court to rule on it" are waived).

property for a profit. *Id.* at 1004. In other words, the employer alleged the employee breached his fiduciary duty of loyalty by failing to disclose material facts regarding a subject matter within the scope of his employment. Based on this conduct, the employer withheld the employee's wages to offset an alleged breach of fiduciary duty. *Id.*

Following trial in *Jensen*, the Idaho Supreme Court held the district court correctly instructed the jury on the employee's fiduciary duty and quoted that instruction at length. *Id.* at 1005. The instruction described the duty of "loyalty" in general terms. *Id.* For example, the instruction stated the duty precludes the agent from "put[ting] himself in such a relationship that his interests become antagonistic to those of his principal" or "placing himself  in a situation in which he may be tempted by his own private interests to disregard that of his principal"; the duty requires "a full disclosure and complete discharge of all [material] facts relative to the subject of his agency"; and "[i]t forbids [the agent] from acting adversely to his principal, either for himself or for others." *Id.*

The Idaho Supreme Court in *R Homes* quoted a portion of the *Jensen* jury instruction when holding that an employee's duty of loyalty includes a duty not to compete with the employer and not to solicit its customers and employees. 123 P.3d at 724. In support, the *R Homes* Court also cited the Restatement (Second) of Agency § 393 (1957). Then, in *Wesco*, the Idaho Supreme Court reiterated that an employee's duty of loyalty precluded him from soliciting the employer's employees and its customers. In support, the *Wesco* Court also quoted a portion of the *Jensen* jury instruction and cited the Restatement (Third) of Agency § 8.04.

In contrast to Wayne's characterization of these cases, LTRAC asserts "none of these cases . . . stand for the proposition that the *only* way for an employee to breach their fiduciary duty is to solicit clients or employees." (Dkt. 45 at p. 19). LTRAC, however, cites no authority to

establish any broader parameters of the duty of loyalty. Rather, it simply relies on the general, broad language in the *Jensen* jury instruction that the duty "demands that the agent shall work with an eye single to the interest of his principal. It forbids him from acting adversely to his principal, either for himself or for others." (*Id.* at p. 20).

Taken together, the Court understands *Jensen*, *R Homes*, and *Wesco* as establishing that an employee has a duty of loyalty to disclose material facts related to the subject matter of his employment and not to compete with the employer or to solicit its customers or employees. That duty, however, does not preclude all "antagonistic" conduct or otherwise forbid an employee from ever taking a position adverse to his employer. Such a rule would subsume all employee-employer disputes. For example, if an employee asserted an employer owed him overtime, that position could be construed as adverse to the employer and antagonistic, thereby constituting a breach the duty of loyalty under LTRAC's interpretation of the law. The duty of loyalty, however, cannot be construed so broadly in the context of laws governing employment. Indeed, no section of either the Restatement (Second) of Agency or the Restatement (Third) of Agency—on which Idaho courts have relied when addressing an employee's duty of loyalty—provides for such a general application of the duty of loyalty.[5]

Here, LTRAC fails to allege a concrete duty of loyalty that Wayne breached or to cite any supporting law for the proposition that Wayne has a duty to avoid a conflict with LTRAC in the

---

[5]    LTRAC cites Restatement (Second) of Agency § 393 (1958) for the proposition that "it is the agent's duty to further his principal's interest even at the expense of his own . . . ." (Dkt. 45 at p. 20). That section of the Restatement, however, provides that "unless otherwise agreed, an agent is subject to a duty not to compete with his principal concerning the subject matter of his agency." Restatement (Second) of Agency § 393. Comment b. of § 393 does provide, however, that "in the usual case, it is the agent's duty to further his principal's interests even at the expense of his own in matters connected with the agency. Thus, an agent to buy or to sell for the principal must not buy or sell in competition with the principal, unless it is so agreed." In its full context, the quote does not stand for the proposition for which LTRAC cites it.

**MEMORANDUM DECISION AND ORDER - 20**

context of his compensation and the performance of his duties. Notably, Wayne did not act in any manner contrary to LTRAC's interest vis a vis a third party—such as a competitor, a customer, or another LTRAC employee. Nor did he fail to disclose material information. Instead, Wayne's conduct related to an ongoing dispute about his contractual right to the Bonus under the Employment Agreement. Namely, to support his Bonus calculation, he developed a "practice" of characterizing contracts and opposed a reorganization. LTRAC's opposition to this conduct constitutes an internal employment dispute which does not implicate the duty of loyalty. Absent any legal authority supporting the proposition an employee who takes a position adverse to his employer relative to his compensation or the performance of his duties breaches the duty of loyalty, the Court declines to create such a duty.

### E.    Duty of Good Faith and Fair Dealing

LTRAC alleges that Wayne violated the covenant of good faith and fair dealing. (Dkt. 20 at ¶¶ 61-67). Specifically, it alleges Wayne "failed to perform his job responsibilities under the Employment Agreement in good faith when he, among other acts, invoiced customers for amounts not yet due, payable, or properly invoiceable at the time of invoicing" and that this practice "if allowed to support [Wayne's] entitlement to a Bonus, would violate, nullify, or significantly impair the contractual benefit of the Bonus provision to which LTRAC was entitled." (*Id.* at ¶¶ 64-65). Wayne seeks summary judgment on this claim.

"A covenant of good faith and fair dealing is implied in all employment agreements." *Knudsen v. J.R. Simplot Co.*, 483 P.3d 313, 327 (Idaho 2021) (quotation omitted). It mandates the parties objectively perform an employment agreement in good faith. *Id.* "[T]he covenant is an objective determination of whether the parties have acted in good faith in terms of enforcing the contractual provisions." *Nix v. Elmore Cnty.*, 158 Idaho 310, 319-20, 346 P.3d 1045, 1054-55

(2015) "[A] violation occurs when either party violates, qualifies, or significantly impairs any benefit or right of the other party under the contract." *Knudsen*, 483 P.3d at 327. "The covenant only arises in connection with the terms agreed to by the parties and does not create new duties that are not inherent in the employment agreement." *Id.* (quotation omitted). If a party "exercise[s] its discretion in such a way as to eviscerate one of [the other party's] benefits of the employment agreement," it breaches the implied covenant. *Ferguson v. City of Orofino*, 953 P.2d 630, 634 (Idaho Ct. App. 1998).

Challenging LTRAC's claim that he breached the covenant of the good faith and fair dealing, Wayne argues LTRAC "received the benefit of the bargain in the form of the precise revenue [it] contracted with [Wayne] to generate." (Dkt. 39-1 at p. 24). In contrast, LTRAC argues "Wayne's performance and practices in 2022 caused [LTRAC's] revenue (both actual and billings basis) to decline." (Dkt. 45 at p. 26). Neither party has moved for summary judgment on whether LTRAC attained the 2022 Revenue; rather, that issue remains a disputed factual issue for trial. Resolving this issue will necessarily involve determining whether Wayne earned the Bonus based on "properly invoiced" amounts. That issue in turn implicates whether Wayne's or LTRAC's benefits or rights under the Employment Agreement were violated, qualified, or significantly impaired. Accordingly, the Court concludes genuine factual issues preclude summary judgment for Wayne on LTRAC's claim for breach of the covenant of good faith and fair dealing.

**F.     LTRAC's Rule 56(d) Motion**

As an alternative to opposing Wayne's motion for partial summary judgment, LTRAC moved under Rule 56(d) to defer summary judgment to allow it to conduct further discovery. Under Rule 56(d), if a nonmoving party at summary judgment shows by affidavit it cannot present facts to justify denying summary judgment, the court may defer consideration of or deny the summary

judgment motion to allow the nonmoving party to conduct discovery, or it may issue any other appropriate order. To prevail on a motion to defer, "[t]he requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *See Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827-28 (9th Cir. 2008) (citation omitted).

In support of its motion, LTRAC argues the discovery it identifies is "[e]ssential to opposing Wayne's" motion because it will show Wayne's "subjective understanding of the contingent earnout provision," his "true motivation" for his invoicing practices, and why he delayed LTRAC's sales team integration. (Dkt. 46-1 at p. 6). In turn, LTRAC argues this evidence will prove "Wayne breached his fiduciary duties by placing his own interest and desires to achieve the earnout over the interests of [LTRAC] by unilaterally adopting an unorthodox 'invoicing' practice and refusing to integrate the LTRAC sales team." (*Id.*). However, because the Court concludes Wayne's duty of loyalty is not so broad as to include his efforts to earn the Bonus, the discovery LTRAC seeks does not impact the Court's summary judgment decision. Accordingly, the Court denies LTRAC's motion to defer summary judgment under Rule 56(d).

## CONCLUSION

Based on the foregoing, the Court DENIES in part and GRANTS in part Wayne's Motion for Partial Summary Judgment (Dkt. 44); DENIES LTRAC's Cross-Motion for Partial Summary Judgment (Dkt. 45); and DENIES LTRAC's Motion to Defer Summary Judgment Rule 56(d) (Dkt. 46).

DATED: April 21, 2025

Amanda K. Brailsford
Amanda K. Brailsford
U.S. District Court Judge